UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

REBECCA B.

                              **Plaintiff,**                        22-CV-00631-HKS

v.

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

## BACKGROUND

On October 29, 2015, plaintiff, at the age of 38, protectively applied for a period of Title II disability and disability insurance benefits, as well as for Title XVI supplemental security income.[1] Plaintiff alleged she was disabled due to panic attacks, depression, vertigo, and migraine headaches, with an onset date of July 14, 2015. Dkt. #6, pp. 335, 341.[2]

---

[1] The Court was unable to locate documentation of plaintiff's protective filing date in the record, but the parties agree that it was October 29, 2015. Dkt. #7-1, p.2; Dkt. #8-1, p. 5.

[2] Record citations use the page number(s) generated by the Court's electronic filing system.

~ 1 ~

Plaintiff's applications were denied on January 20, 2016. Dkt. #6, pp. 118-137, 140-145. Plaintiff requested a hearing, and a hearing was held on April 6, 2018 before Administrative Law Judge ("ALJ") Bryce Baird. Dkt. #6, pp. 83-117. Plaintiff was represented by a non-attorney representative.

The ALJ issued an unfavorable decision on June 13, 2018. Dkt. #6, pp. 199-217. On May 4, 2019, the Appeals Council remanded the matter for further administrative proceedings. Dkt. #6, pp. 230-232.

On remand, the same ALJ held a hearing on February 7, 2020. Dkt. #6, pp. 40-82. Plaintiff was represented by counsel.

On examination by the ALJ, plaintiff testified that she was 41 years old, 5'1" tall, and she weighed 132 pounds. Dkt. #6, p. 52. She completed the eleventh grade and does not have a GED, but she was working on getting one. *Id.* She lives in an apartment with her fiancé and two youngest children, ages 5 and 7. Dkt. #6, p. 53.

Plaintiff's counsel next questioned her. She testified that she has shooting pain in her back such that she needs to lie down, and the pain has become worse since 1999. Dkt. #6, pp. 54, 56. Her doctor prescribed ibuprofen for the pain and has not recommended surgery. Dkt. #6, p. 55.

Plaintiff further testified that when the pain is tolerable, she can stand for 6 hours or perhaps more. *Id.* Sometimes, however, she is unable to stand. *Id.* However, plaintiff next testified that she has pain every day and spends most of her time lying on the couch. Dkt. #6, p. 57. Sitting also helps to alleviate the pain, but she cannot sit for more than two hours. Dkt. #6, pp. 57-58. However, on questioning by the ALJ, plaintiff then testified that sitting is painful no matter how long she sits. Dkt. #6, pp. 58-59.

Plaintiff then testified in response to her counsel's questioning that she can bend over to tie her shoe but that it hurts to return to standing. Dkt. #6, p. 59. As to household chores, she is unable to do them all at one time, and her fiancé and children help. Dkt. #6, pp. 59-60.

The ALJ asked plaintiff what she takes for her pain, and she stated that she takes only ibuprofen. Dkt. #6, p. 60. She takes medications for other conditions, including stomach problems, vertigo, migraines, anxiety, depression, and sleep problems. Dkt. #6, pp. 61-62. She testified that the medications cause side effects such as dizziness, fatigue, and blurred vision. Dkt. #6, pp. 63-64.

Plaintiff next testified that she has migraines 2-3 days per week which last for hours, and she needs to be in a dark room with no light or sound. Dkt. #6, p. 64. She also has panic/anxiety attacks when she is "stressed out," such as when she is unable to pay her bills. Dkt. #6, p. 65. She also experiences depressive episodes 4-5 days per week. Dkt. #6, pp. 66-67.

The ALJ asked plaintiff if she had ever received mental health counseling, and she said that she had in 2017 and it was helpful. Dkt. #6, pp. 67-68. Plaintiff then testified that she gets along with people great and is sociable. Dkt. #6, p. 69.

Plaintiff also testified that she experiences vertigo a few times a week. Dkt. #6, pp. 70-71. She gets dizzy if she stands up or bends over too fast. Dkt. #6, p. 72.

The ALJ next heard testimony from Christina Boardman, a vocational expert ("VE"). Dkt. #6, p. 74. The ALJ asked the VE to assume a hypothetical person of the plaintiff's age, education, and past work experience with the following limitations: she can occasionally lift or carry up to 20 pounds; frequently carry up to 10 pounds; sit for up to 6 hours in an 8-hour workday and stand or walk for up to 6 hours in an 8-hour workday; would have the option to stand or stretch for up to one minute after 30 minutes of sitting and would be off task for that minute; would be capable of frequent climbing of ramps and stairs, balancing, stooping, and kneeling; occasional crouching; no crawling or climbing of ladders, ropes, or scaffolds; limited to environments in which there is no exposure to excessive vibration or to hazards such as unprotected heights or moving machinery and exposure to no more than a moderate noise level; no direct exposure to bright or flashing lights; limited to simple, routine tasks that could be learned after a short demonstration or within 30 days; would be allowed to be off task approximately 5% of the workday, in addition to regularly scheduled breaks; and the work would not require teamwork, such as on a production line. Dkt. #6, pp. 75-77.

Given this hypothetical, the VE testified that the person could not perform plaintiff's past work as a food sales clerk. Dkt. #6, p. 77. However, the VE testified that the person could perform the light work jobs of office helper, ticket seller, and routing clerk. *Id.*

Next, the ALJ asked the VE to assume a second hypothetical with the additional limitation that the person—due to symptoms of pain, mental health, and medication side effects—would be unable to sustain sufficient concentration or pace to do simple, routine tasks on a regular and continuing basis for 8 hours a day, 5 days a week, for a 40-hour work week or equivalent work schedule. Dkt. #6, pp. 77-78.

Given this additional limitation, the VE testified that the person could not competitively perform any work in the national economy. Dkt. #6, p. 78.

On examination by plaintiff's counsel, the VE testified that these positions would not allow the person to lie down while they were performing the work. Dkt. #6, p. 79. The VE testified, however, that the positions allowed off-task time of up to 15% throughout the day. *Id.*

The ALJ issued an unfavorable decision on June 25, 2020, Dkt. #6, pp. 21-39, and the Appeals Council declined review on June 22, 2022. Dt. #6, pp. 6-12. This action followed.

## DISCUSSION AND ANALYSIS

### **Legal Standards**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R.

§ 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since July 14, 2015, the alleged onset date; (2) plaintiff has the severe impairments of degenerative disc disease ("DDD") of the lumbar spine; history of migraine headaches; and depression and anxiety; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff has the RFC to perform light work[5] except that she is restricted to occasionally lifting, carrying, pushing, and pulling up to 20 pounds, and frequently lifting,

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

carrying, pushing, and pulling up to 10 pounds; sitting up to 6 hours in a 8-hour workday and standing or walking up to 6 hours in a 8-hour workday; she requires a sit/stand option that allows her to stand or stretch up to 1 minute after 30 minutes of sitting, and she would be off task for the 1 minute of standing or stretching; frequently climbing ramps or stairs, but never ladders, ropes, or scaffolds; frequently balancing, stooping, kneeling and occasionally crouching; never crawling; she can be exposed to a "moderate" noise level; she can never be exposed to excessive vibration or hazards such as unprotected heights or moving machinery; she can have no direct exposure to bright or flashing lights; she is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days; due to symptoms of pain as well as mental health symptoms, she is limited to work that would allow her to be off task up to 5% of the workday, in addition to regularly scheduled breaks; and she is limited to work that does not require teamwork, such as on a production line; (5) plaintiff was not capable of performing her past relevant work as a food sales clerk; and (6) plaintiff is capable of performing the jobs of office helper, ticket seller, and routing clerk; and (7) plaintiff is therefore not disabled within the meaning of the SSA. Dkt. #6, pp. 26-33.

For claims filed before March 27, 2017, the SSA regulations provide that, unless the ALJ affords controlling weight to a treating source's medical opinion, the ALJ is required to consider and weigh all medical opinions of record, whether those opinions are from acceptable medical sources, other medical sources or non-medical sources, with consideration of the following factors for determining the appropriate weight to afford such opinions: (1) the frequency of examination; (2) the nature and extent of the treatment

relationship; (3) the evidence in support of the medical opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the SSA's attention that tend to support or contradict the opinion. *Saxon v. Astrue*, 781 F. Supp.2d 92, 103-04 (N.D.N.Y. 2011); *See* 20 C.F.R. § 404.1527 (c). The factors to be considered in evaluating opinions from non-treating medical sources are the same as those for assessing treating sources, except that consideration of the treatment relationship is replaced with consideration of whether the non-treating source examined the plaintiff. *White v. Saul*, 414 F. Supp.3d 377, 383 (W.D.N.Y. 2019). So long as the ALJ's rationale is clear, however, the ALJ need not address each factor individually. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013).

Genuine conflicts in the medical evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in a decision, the ALJ is entitled to weigh all the evidence available to make a residual functional capacity finding that is consistent with the record as a whole. *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed. App'x 75, 79 (2d Cir. 2018); *Matta v. Astrue*, 508 Fed. App'x 53, 56 (2d Cir. 2013). An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence. *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). While the ALJ is not obligated to explicitly reconcile every conflicting shred of medical evidence, the ALJ cannot selectively choose evidence in the record to support the ALJ's conclusions. *Gecevic v. Sec. of Health & Human Servs.*, 882

F. Supp. 278, 286 (E.D.N.Y. 1995). A plaintiff is entitled to understand why the ALJ chose to disregard portions of medical opinions that were beneficial to his application for benefits. *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp.2d 288, 297 (W.D.N.Y. 2006). Thus, when an ALJ chooses to adopt only portions of a medical opinion, the ALJ must explain his decision to reject the remaining portions. *Tanya Y. v. Comm'r of Soc. Sec.*, 20-CV-712, 2022 WL 1115458, at *2 (W.D.N.Y. Apr. 14, 2022).

### **Challenge to the ALJ's Decision**

Plaintiff makes a single challenge to the ALJ's decision: she argues that specific limitations included in the RFC were not tethered to any medical opinion or record evidence and are thus not supported by substantial evidence. Dkt. #7-1.

Specifically, plaintiff argues that the ALJ's findings that plaintiff would need to stand or stretch for up to one minute after 30 minutes of sitting, and that she would be off task for up to 5% of the workday, were not supported by any medical opinion and were based on his own surmise. Dkt. #7-1, pp. 13-24. The Court disagrees.

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp.3d 312, 323 (W.D.N.Y. 2024) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "While an ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in [his] decision, . . . an ALJ is not a medical professional, and therefore [he] is not qualified to assess a

claimant's RFC on the basis of bare medical findings." *Id.* (citation and internal quotation marks omitted).

"At bottom, [a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Id.*

Thus, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Id.* "Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing the very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions." *Id.* (collecting cases).

Further, when "the record contains at least some evidence of a specific limitation, the ALJ may appropriately reach a specific RFC incorporating that limitation." *Threatt v. Comm'r of Soc. Sec.*, 19-cv-00025(JJM), 2020 WL 4390695, at *6 (W.D.N.Y. July 31, 2020) (citation and internal quotation marks omitted).

In sum, it "is the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Palistrant v. Comm'r of Soc. Sec.*, Case # 16-CV-588-FPG, 2018 WL 4681622, at *5 (W.D.N.Y. Sept. 28, 2018) (citation and internal quotation marks omitted).

Having reviewed the record, the Court concludes that the ALJ's formulation of plaintiff's RFC comports with these authorities.

First, the ALJ reviewed the medical evidence, including plaintiff's treatment records, reports of consultative examiners, and medical source statements from plaintiff's treating physician. Dkt. #6, pp. 30-31. Indeed, in her brief, plaintiff states that the ALJ "considered the evidence as a whole." Dkt. #7-1, p. 14.

Plaintiff also concedes that "[t]he opinion evidence expressed some variation [in] Plaintiff's ability for sitting, standing and walking *which supports an ability to have a sit/stand option*." Dkt. #7-1, p. 16 (emphasis added). In fairness to the ALJ, however, the term "variation" is too mild. It is more accurate to say that the evidence was all over the map in terms of plaintiff's limitations.

The ALJ noted the inconsistencies in plaintiff's testimony regarding her ability to sit and whether sitting alleviated her back pain, and he noted further that her testimony did not match the objective medical evidence. Dkt. #6, p. 31.

After recounting the longitudinal medical evidence regarding plaintiff's various impairments, including her back pain, the ALJ turned to the opinion evidence. He discussed the consultative internal medicine exam performed by Dr. Nikita Dave on September 9, 2019, after the Appeals Council's remand. Dkt. #6, p. 30. Dr. Dave specifically noted that plaintiff "may benefit from seated to the light activities" and may

have "mild limitations for prolonged sitting." *Id.* However, the ALJ noted that Dr. Dave's medical statement assessed limitations that would still allow plaintiff to perform a range of light work. *Id.* Ultimately, the ALJ gave Dr. Dave's opinion "great weight." Dkt. #6, p. 31.

Next, the ALJ reviewed the statements of plaintiff's treating provider, Dr. Nadia Polataiko. Dkt. #6, pp. 30-31. In a statement submitted in November 2015, shortly after plaintiff applied for benefits, Dr. Polataiko indicated that plaintiff had no limitations. Dkt. #6, p. 383. In 2017, however, she opined that plaintiff was unable to sit for more than three hours in an 8-hour workday. Dkt. #6, p. 474.[3]

While the ALJ gave Dr. Polotaiko's opinion "substantial weight," he noted that her 2017 medical source statement ("MSS") contained internal inconsistencies which the Appeals Council apparently overlooked. Dkt. #6, p. 31. Importantly, the 2017 MSS states that plaintiff can sit for 6 hours at a time without limitation, but it then states that she can sit for no more than 3 hours per day. Dkt. #6, p. 474. These statements are obviously inconsistent.

The ALJ also noted the error in the Appeal Council's assessment of the MSS as limiting plaintiff to walking for no more than 2 hours. In fact, the MSS's statement that

---

[3] There appears to be a typographical error on page 7 of the ALJ's decision. In the last paragraph on that page, the ALJ states that Dr. Polataiko had opined that plaintiff was "unable to stand or walk for *less* that 3 hours in an 8-hour day." Dkt. #6, p. 30. However, given the boxes checked on her medical source statement, it seems clear that "less" was an error and the word should have been "more." Dkt. #6, p. 474.

plaintiff can "continuously" lift or carry up to 10 pounds necessarily means she can walk more than 2 hours. Dkt. #6, pp. 31, 473.[4]

The ALJ then acknowledged the opinion of consultative psychiatric examiner, Dr. Janine Ippolito, who examined plaintiff in 2016 and opined that she could appropriately deal with stress caused by her anxiety with "moderate" limitations. Dkt. #6, pp. 387-390.

The ALJ next reviewed the report of consultative examiner, Dr. Hongbiao Liu, who opined that "the claimant has no limitation for routine activities." Dkt. #6, pp. 384-386.

The ALJ afforded "great weight" to the opinions of Drs. Ippolito and Liu. Dkt. #6, p. 31.

Finally, the ALJ concluded his explanation of the RFC by noting that plaintiff's complaints were not "entirely credible," but he assessed a light RFC based on her complaints which was "more restrictive than any of the other opinions." Dkt. #6, pp. 31-32.

Thus, the record contains substantial evidence that supports limitations—even specific ones—on plaintiff's ability sit for prolonged periods and to stay on task; her

---

[4] "Continuously" is defined as more than two-thirds of an 8-hour workday. Dkt. #6, p. 473.

---

own testimony regarding her back pain and its exacerbation from sitting; her testimony regarding the effect of her back pain, migraines, and anxiety on her functioning; and the medical opinions which stated that she had either no limitations, mild limitations, or moderate limitations in sitting and managing stress. *See Barry J.*, 725 F. Supp. 3d at 324 ("Here it is clear to the Court that the ALJ did not formulate the mental limitations in the RFC from whole cloth. Rather, the ALJ considered the multiple medical opinions in conjunction with the other evidence in the record, including Plaintiff's reports of his functioning, in assessing the RFC and the ALJ adequately explained how he incorporated these limitations into the RFC."); *Threatt*, 2020 WL 4390695, at *6 ("In addition to plaintiff's testimony, ALJ Martin also considered the objective medical evidence, plaintiff's treatment history, plaintiff's daily activities, and medical opinions of record. Therefore, I conclude that the sitting, standing, and walking limitations assessed by ALJ Martin were consistent with the record and supported by substantial evidence."); *Barone v. Comm'r of Soc. Sec.*, 19-cv-00482(JJM), 2020 WL 3989350, at *4-5 (W.D.N.Y. July 15, 2020) (substantial evidence supported specific sit/stand option even though it did not correspond to any medical opinion; plaintiff testified to her sitting limitations, and a "claimant's testimony is acceptable evidence to support the inclusion of a limitation in an RFC determination.") (citation and internal quotation marks omitted); *Palistrant*, 2018 WL 4681622, at *6 (similar). *See also Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate Johnson's limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").

It also bears noting that the sit/stand and off-task limitations included in the ALJ's RFC were more restrictive than some of the medical opinions, which weighs against remand. *Threatt*, 2020 WL 4390695, at *5.

For all these reasons, the Court finds that the ALJ's decision was supported by substantial evidence such that remand is not required.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         January 14, 2025

                                           **s/ H. Kenneth Schroeder, Jr.**
                                           **H. KENNETH SCHROEDER, JR.**
                                           **United States Magistrate Judge**